IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RYAN KISE, | : | |
| | : | Case No.: 2:23-cv-00163 |
| Plaintiff, | : | |
| | : | |
| v. | : | Judge James L. Graham |
| | : | |
| THOMAS EXCAVATING, LLC, | : | Magistrate Judge Elizabeth P. Deavers |
| | : | |
| -&- | : | |
| | : | |
| | : | |
| MOLLY L. JAMES, | : | |
| | : | |
| Defendants. | : | |

**JOINT MOTION FOR APPROVAL OF SETTLEMENT**

Plaintiff Ryan Kise ("Plaintiff"), Thomas Excavating, LLC ("Defendant Thomas") and Molly L. James ("Defendant James") (collectively, the "Parties"), hereby respectfully move this Court to review the Parties' Settlement and Release Agreement (the "Settlement Agreement"), attached hereto as **Exhibit A**, and for an Order approving the Settlement Agreement as fair and reasonable, which will also result in dismissal of this case with prejudice. In support of this motion, the Parties state as follows:

1. Plaintiff commenced this action against Defendant Thomas and Defendant James on January 13, 2023 on behalf of himself and all others similarly situated alleging violations of the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111 *et seq*., (the "Ohio Wage Act"), the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as the "Ohio Acts"), and O.R.C. § 2307.60.

2. Defendants have denied liability and wrongdoing of any kind.

3. On April 5, 2023, after no opt-in Plaintiffs had joined the case, Plaintiff had not moved for conditional certification, and the Parties had engaged in arms-length negotiations regarding Plaintiff's

1

individual claims, Plaintiff filed an Unopposed Motion for Leave to File his First Amended Complaint wherein he removed all class and collective allegations. (ECF No. 15). The Court granted Plaintiff's Motion on April 6, 2023, and Plaintiff's First Amended Complaint pursuing only individual claims was filed on the same day thereby becoming the operative Complaint. (ECF Nos. 16-17).

4. In an effort to reach a compromise and to avoid the expense and burden of litigation, the Parties have reached a settlement of all claims asserted in the pending action. The terms of the settlement are embodied in the Settlement Agreement. *See* **Ex. A**.

5. Plaintiff's and Defendants' undersigned counsel believe that the proposed Settlement Agreement is fair and reasonable.

6. The proposed Settlement Agreement is contingent upon the Court's review and approval of it, as well as the Court's issuance of an Order approving the Settlement Agreement as fair and reasonable and dismissing this case with prejudice.

7. The Parties agree that bona fide disputes exist regarding Plaintiff's wage-and-hour claims, including, but not limited to, disputes as to liability and the scope/amount of potential damages, if any. Notably, Defendants deny Plaintiff's allegations and deny that they violated any law as to Plaintiff.

8. The Parties stipulate and agree that the proposed Settlement Agreement: (a) is not the product of fraud or collusion; (b) is in resolution of complex and expensive litigation that is likely to be of a significant duration; (c) accounts for the likelihood of success on the merits by Plaintiff, as well as the defenses of the Defendants, and the risks and costs associated with further litigation; (d) is reasonable and fair in the opinion of the Parties' counsel; and (e) is in the public's best interest to promote the early resolution of contested claims in litigation.

9. The Parties, pursuant to Fed. Civ. R. 41(a)(1)(ii) and based upon the attached Settlement Agreement, hereby stipulate to the dismissal of this case with prejudice, if the settlement is approved by this Court, with each party to bear their own attorneys' fees and costs, except as otherwise provided in

the Settlement Agreement. The Parties request that this Court retain jurisdiction to enforce the terms of the proposed Settlement Agreement.

WHEREFORE, for the foregoing reasons, the Parties request that the Court review the proposed Settlement Agreement (*see* **Ex. A**) and issue an Order (*see* Proposed Order Approving Settlement Attached as **Exhibit B**) approving it as fair and reasonable, and that this case be stipulated as dismissed with prejudice with each party to bear their own attorneys' fees and costs, except as otherwise provided in the Settlement Agreement. The Memorandum in Support of this Motion is incorporated herein.

Date: May 11, 2023                                             Respectfully submitted,

| | |
|---|---|
| */s/ Jacob A. Mikalov* | */s/ Robert M. Robenalt by /s/ Jacob A. Mikalov* per email authorization |
| Jacob A. Mikalov (OH Bar No. 0102121) | Robert M. Robenalt (OH Bar No. 0042251) |
| Robert E. DeRose (OH Bar No. 0055214) | Meghan M. Delaney (OH Bar No. 0075015) |
| **BARKAN MEIZLISH DEROSE COX, LLP** | **FISHER & PHILLIPS LLP** |
| 4200 Regent Street, Suite 210 | 250 West Street, Suite 400 |
| Columbus, OH 43219 | Columbus, OH 43215 |
| Phone: (614) 221-4221 | Phone: (614) 221-1425 |
| Facsimile: (614) 744-2300 | Facsimile: (614) 221-1409 |
| jmikalov@barkanmeizlish.com | rrobenalt@fisherphillips.com |
| bderose@barkanmeizlish.com | mdelaney@fisherphillips.com |
| | |
| *Counsel for Plaintiff* | *Counsel for Defendants* |

**MEMORANDUM IN SUPPORT OF THE JOINT
MOTION FOR APPROVAL OF SETTLEMENT**

I. **INTRODUCTION**

Plaintiff Ryan Kise ("Plaintiff") and Defendants Thomas Excavating, LLC and Molly L. James ("Defendants") (collectively, the "Parties") have reached a Settlement Agreement with respect to the above-captioned lawsuit. The settlement in principle was achieved through extensive arm's length negotiations between the Parties' respective counsel. The settlement is memorialized in the Settlement and Release Agreement ("Settlement" or "Agreement"), attached as **Exhibit A** ("**Ex. A**"). The Agreement sets forth, among other terms, the identity of the Plaintiff—Ryan Kise—and the amount to be paid to him and his Counsel by Defendants. Under the Agreement, the Parties agree to releases of claims and dismissal of this action with prejudice will be filed with the Court after approval of this Motion.

II. **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff commenced this action against Defendants on January 13, 2023, alleging violations of the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act (the "Ohio Wage Act"), the Ohio Prompt Pay Act ("OPPA") (the Ohio Wage Act and the OPPA will be collectively referred to as the "Ohio Acts") and O.R.C. § 2307.60. ECF No. 1. Plaintiff initially brought this action as a class under Fed. R. Civ. P. 23 and as a collective under 29 U.S.C. § 216(b). *Id.* On February 7, 2023, the Parties filed a Joint Stipulation Extending Defendants' time to respond to Plaintiff's Complaint until March 1, 2023, and March 2, 2023, respectively. ECF Nos. 7-8. On March 1, 2023, Defendants filed their Answer to Plaintiff's Complaint wherein they denied violations of the above statutes and asserted multiple affirmative defenses. ECF No. 11.

On February 21, 2023, the Parties filed their Rule 26(f) Report. ECF No. 9. In their Report, the Parties informed the Court that Plaintiff was to proffer upon Defendants a settlement demand the week of February 20, 2023 in an effort to explore potential resolution of this matter and to avoid lengthy and expensive litigation. *Id.* at PAGEID 45. The Parties—through their respective and experienced counsel—

4

consequently engaged in arm's-length negotiations in an effort to resolve this matter. During negotiations, no opt-in Plaintiffs joined this Action. *See generally* Docket.

Through negotiations, a resolution of disputed claims was reached. As no opt-in Plaintiffs had joined this Action and since Plaintiff had yet to move for conditional certification of the alleged collective or certification of the class, Plaintiff filed an Unopposed Motion to File his First Amended Complaint on April 5, 2023, which would permit Plaintiff to remove his class and collective allegations from this Lawsuit. ECF No. 15. On April 6, 2023, the Court granted Plaintiff leave to file his First Amended Complaint, which was subsequently considered to be filed and became the operative Complaint on that same day. ECF Nos. 16-17. The Parties then collaboratively drafted and executed the Settlement Agreement that is currently before the Court. If approved by this Court, the Agreement will resolve this matter in its entirety.

### III. SUMMARY OF SETTLEMENT TERMS

#### a. The Terms Pertaining to Compensation and the Release of Claims are Reasonable and Should be Approved.

The proposed Settlement obligates Defendants to pay Fifteen Thousand Dollars ($15,000) to settle Plaintiff's claims in this action ("Gross Settlement Amount"). *See* **Ex. A**, at ¶ 1. The Gross Settlement Amount covers all wage and hour claims, including claims for attorneys' fees and costs.

In exchange for these payments and the other consideration detailed in the Agreement, Plaintiff will release Defendants and their related entities and individuals consistent with the terms of the Settlement Agreement, which is an integrated document that speaks for itself, and is not modified in any way hereby.

#### b. The Settlement Administration and Distribution Provisions are Fair and Reasonable and Should be Approved.

5

Under the Agreement's terms, Defendants will have thirty days (30) days after the Approval Order to make payments totaling $15,000.00 to Plaintiff's Counsel on Plaintiff's behalf to settle his claims pursued in this Lawsuit inclusive of any claims for attorneys' fees and costs. *See* **Ex. A**, at ¶ 2(e).

**IV.  THE SETTLEMENT IS FAIR AND REASONABLE AND SHOULD BE APPROVED BY THE COURT**

Where the litigation arises from a private enforcement action under Section 216(b) of the FLSA, the standard for approval of a settlement is straightforward: a district court should approve a settlement if it was reached as a result of contested litigation, and where it is a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)); *Graybill v. Petta Enters., LLC*, No. 2:17-cv-418, 2018 WL 4573289, at *4, *adopted* 2018 WL 4963569 (Oct. 15, 2018) (noting that "a district court may be satisfied that the parties are not … negotiating around FLSA requirements where there is a 'bona fide dispute under the FLSA,' citing *Kritzer v. Safelite Solutions, LLC*, No. 10Civ. 0729, 2012 WL 1945144, at *5-8 (S.D. Ohio May 30, 2012)); *Dillworth v. Case Farms Processing, Inc.*, No. 05 Civ. 1694, 2010 WL 776933, at *5 (N.D. Ohio Mar. 8, 2010) (recognizing that the courts ensure plaintiffs are not abandoning FLSA rights by determining a bona fide dispute exists); *Schneider v. Goodyear Tire & Rubber Co.*, No. 13 Civ. 2741, 2014 WL 2579637, at *2 (N.D. Ohio June 9, 2014) (recognizing that the existence of a bona fide dispute serves as a guarantee the parties have not manipulated the process to avoid FLSA obligations).

The Court should thus perform two inquiries before approving an FLSA settlement. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must be satisfied that the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the Parties. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as an indicium of fairness. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the Court should approve the settlement to promote the

6

policy of encouraging settlement of litigation. *Id.*; *see also Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (approving settlement upon finding it was reasonable and brought resolution to a matter contested for a number of years); *Swigart v. Fifth Third Bank*, No. 1:11-CV-00088, 2014 WL 12654902, at *1 (S.D. Ohio Feb. 19, 2014) ("The Court further finds that the settlement reflects a reasonable compromise over contested issues under the FLSA, including but not limited to whether Defendants properly classified Plaintiffs as exempt and Defendants' good faith defense."); *Crawford v. Lexington-Fayette Urban Cty. Gov't*, No. 06 Civ. 299, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008).

Based on the vigorously contested nature of this litigation over an extended period of time and the resolution obtained, this Settlement is a reasonable resolution of a *bona fide* dispute in contested litigation. The Parties have entered into their Settlement Agreement as a compromise to avoid the risks, distractions, and costs that will result from further litigation.

**a. The Proposed Settlement is the Product of Contested Litigation.**

The Parties' Settlement is a result of contested litigation. This action has been pending for nearly five (5) months and was resolved only through hard-fought settlement negotiations. The Parties have fully analyzed the pertinent factual and legal issues in this case, as well as having assessed the strengths and weaknesses of the claims and defenses at issue. These facts are sufficient to establish a "contested" litigation. *See Simmons v. Mathis Tire & Auto Serv.*, No. 13-2875-STA-tmp, 2015 U.S. Dist. LEXIS 114008, at *2 (W.D. Tenn. Aug. 20, 2015) ("Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes concerning a plaintiff's entitlement to compensation under the FLSA.").

**b. The Proposed Settlement Reflects a Fair and Reasonable Resolution of a Bona Fide Dispute Between the Parties.**

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue concerns the existence of a *bona fide* dispute between the Parties, and the second issue addresses the

7

fairness and reasonableness of the proposed settlement. Both issues implicated by this second prong of the Court's settlement approval inquiry are also satisfied.

      i.    **A *Bona Fide* Dispute Between the Parties Existed Over Liability.**

The Settlement resolves a *bona fide* dispute between the Parties. Plaintiff contends that Defendants violated the FLSA, the Ohio Acts, O.R.C. § 2307.60, and O.R.C. § 4111.14(G). The alleged violations include:

1) failure to pay overtime under the FLSA;
2) failure to pay wages timely in accordance with the Ohio Acts;
3) willful violation of the FLSA; and
4) violation of O.R.C. § 4111.14(G).

Defendants denied virtually all of Plaintiff's allegations, contested these claims vigorously, and asserted multiple defenses and affirmative defenses. *See* ECF No. 11.

Further, as detailed below, this action was settled after nearly five (5) months of litigation, following extensive work by the Parties and their Counsel. Prior to the filing of this action, Plaintiff's Counsel performed extensive research and investigation regarding Defendant Thomas Excavating's pay practices, potential liability, potential settlement, and whether Defendant had acted in good faith (or willfully) in its pay practices. *See* Declaration of Jacob A. Mikalov, Esq., attached as **Exhibit C** ("**Ex. C**") at ¶ 13. The Parties fought to resolve various complex, disputed issues, such as whether Plaintiff was non-exempt from the FLSA's protections and the number of hours Plaintiff worked each week, among others. Absent settlement, extensive work remains for both sides, including written discovery, depositions, dispositive motions, and pre-trial filings regarding the applicability of the FLSA, the Ohio Acts, and O.R.C. § 2307.60 as well as the issues of liability, good faith, willfulness, and alleged damages. This significant and outstanding body of work also includes trial on the merits and potential appellate issues. Accordingly, the Parties engaged in significant work, recognized, and appreciated the risks in proceeding

if this case was not settled, and recognized that this Settlement represented a compromise of the range and uncertainty of potential liability and alleged damages.

Finally, Plaintiff and Plaintiff's Counsel believe that this Settlement is in the best interest of the Plaintiff. *See*, **Ex. C** at ¶ 12. The Parties disputed whether there were any violations of the law, including of the FLSA and the Ohio Acts. If the matter is not resolved by settlement, there remains a risk that the ultimate trier of fact will reach a defense verdict, resulting in Plaintiff receiving nothing. While Plaintiff feels strongly about the veracity of his allegations, absent settlement, Defendants intend to deny Plaintiff's allegations continuously and vigorously during and after additional and complex discovery.[1] This process would have been time-consuming and expensive for all Parties. Moreover, it could reasonably be months, if not years, before Plaintiff receives any monetary relief (assuming liability could be established, which Defendants deny) absent the approval of the negotiated Settlement Agreement before the Court.

### ii. The Proposed Settlement is Fair and Reasonable.

The settlement amount is reasonable considering the considerable risk that Plaintiff faced. "The Sixth Circuit has identified seven factors that should aid a court in its determination of whether a class action settlement is fair, reasonable and adequate: 1) the risk of fraud or collusion; 2) the complexity, extent and likely duration of the litigation; 3) the amount of discovery engaged in by the parties; 4) the likelihood of success on the merits; 5) the opinions of class counsel and class representatives; 6) the reaction of absent class members; and 7) the public interest. *Combs v. TruGreen Ltd. P'ship*, No. 1:08-CV-489, 2010 WL 1163094, at *5 (S.D. Ohio Sept. 2, 2010) (citing *UAW v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). Other factors are considered in determining whether the settlement of FLSA claims is "fair and reasonable." *Id*. The court may choose to consider only certain factors that are

---

[1] Throughout this litigation, Defendants vehemently denied having violated the FLSA, the Ohio Acts, or any other law, and vigorously defended their position, further demonstrating a *bona fide* dispute between the Parties. *See, e.g., Graybill*, 2018 WL 4573289, at *4 (finding a *bona fide* dispute existed for purposes of FLSA settlement where Defendants denied allegations that it violated the FLSA and provided declarations in support of its position); *Lackie v. U.S. Wells Servs.*, No. 2;15-cv-0695, 2017 WL 784815, adopted, 2017 WL 951479 (S.D. Ohio Mar. 10, 2017) (approving FLSA settlement where the issues "were hotly contested" as evidenced by the "extensive motion practice and briefing"); *Swartz v. D-J Eng'g. Inc.*, 2016 WL 633872, 2016 U.S. Dist. LEXIS 20017 (D. Kan. Feb. 17, 2016).

relevant to the settlement at hand and may choose to weigh factors according to the demands of the case. *Id*. In certain cases, a court may consider each factor individually. *Id*. "More often, however, inquiry into one factor necessarily overlaps with inquiry into another." *Id*. (internal citations omitted); *Kunkle v. Q-Mark, Inc.*, No. 3:13-CV-82, 2013 WL 6913250, at *1 (S.D. Ohio Dec. 30, 2013) (noting that courts apply the above seven factors when determining whether a proposed FLSA settlement is fair and reasonable.). Each of these factors favor settlement. Accordingly, the settlement proceeds and terms are fair, reasonable, and adequate.

### 1. There is No Evidence of Fraud or Collusion.

Here, the Settlement was the product of arms' length negotiations between experienced wage and hour counsel. The Settlement was reached after an extended period of engaging in arms' length negotiations. *See Dillworth*, 2010 WL 776933, at *6 (approving settlement that was reached after the parties engaged in "arms-length negotiation, following extensive investigation and discovery."); *Ford v. Carnegie Mgmt. Servs., Inc.*, No. 2:16-CV-18, 2017 WL 4390294, at *2 (S.D. Ohio Oct. 3, 2017) ("The parties' divergent positions would have required judicial resolution had a settlement not been reached through many months of arms-length negotiation between competent counsel. Thus, the settlement is free from indicia of fraud and collusion.").

### 2. The Complexity, Expense and Likely Duration of the Litigation.

As outlined above, the Parties disagree about the merits of Plaintiff's claims, the viability of Defendants' defenses, and the scope and amount of any potential recovery if liability were found to exist. Defendant denies Plaintiff's allegations and denies that it violated any law as to Plaintiff. If the litigation had continued, the Parties would have faced obstacles and uncertainties, including the outcome of complex discovery disputes, a potential for summary judgment, and potentially a trial on the merits. *Dillworth*, 2010 WL 776933, at *6 (noting that "given the factual and legal complexity of the case, there is no guarantee that Plaintiff would prevail at trial. In contrast, the Settlement Agreement assures that Plaintiff

will receive substantial compensation for time spent in the disputed activities.").

Accordingly, the remaining duration of this case would be significant; yet, Plaintiff's recovery of damages, if any, is far from certain. With the Parties' settlement, Plaintiff will receive concrete relief, while Defendants will avoid the continued expense of litigation and the relative peace-of-mind guaranteed by Plaintiff's release of claims.

### 3. The Amount of Discovery to be Engaged in by the Parties.

The Parties have yet to engage in the time-consuming and extensive process of formal discovery pursuant to Federal Rule of Civil Procedure 26. However, the Parties have engaged in informal discovery, including through the Parties' recounting of events, which have provided the Parties with more than "adequate information in order to evaluate the relative positions of the parties." *Graybill*, 2018 WL 4573289, at *5. Using this informal process, Plaintiff's Counsel calculated potential damages that Plaintiff could stand to recover if liability could be established. Further, Plaintiff's Counsel has comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed Settlement. *See Kritzer,* 2012 WL 1945144, at *7.

### 4. The Likelihood of Success on the Merits.

As articulated supra at Part IV(b)(i), Plaintiff alleged various types of overtime violations and alleged failure to pay wages in a timely manner pursuant to the FLSA and the Ohio Acts. To summarize, Plaintiff alleged that he often worked much more than forty (40) hours a week and was not paid overtime as required by the FLSA and the Ohio Acts. Defendants vigorously deny these allegations—specifically, Defendants maintain, among other factual and legal positions and defenses, that Plaintiff either: (a) was exempt from receiving overtime compensation; or (b) was appropriately compensated for his time spent employed by Defendant Thomas Excavating. Given the procedural posture of the case, Plaintiff believes the probability of success is high on his alleged wage claims. Defendants completely disagree and

11

vehemently deny these allegations, including as to liability and potential damages.

Defendants asserted numerous factual and affirmative defenses through its pleadings. Defendants claimed that Plaintiff was given all the compensation he was entitled to and that Plaintiff was not due any more wages or damages as alleged in the Complaint. Defendants also alleged that Plaintiff's claims were barred, in whole or in part, by the doctrines of waiver, estoppel, laches, and/or accord and satisfaction, and that his claims were barred under the statute of limitations, among others.

The Parties believe they are correct in their respective analyses of the law and that their views of the facts would support their positions either in summary judgment or at trial. Given their polarized positions, the Parties were heading toward protracted and expensive litigation. The negotiated resolution is in the interest of both Parties because only one Party would ultimately prevail.

### 5. The Opinion of Plaintiff and Plaintiff's Counsel.

Based on Plaintiff's Counsel's knowledge of the case and applicable law, as well as their experience in numerous similar wage and hour lawsuits throughout the United States, Plaintiff's Counsel believes that the Settlement constitutes a fair and reasonable result for all Parties. *See,* **Ex. C** at ¶ 10. The Settlement provides a meaningful recovery for the Plaintiff. Plaintiff will receive payment of alleged back wages during the relevant time period, $4,062.50, and $4,062.50 in alleged liquidated damages. *See*, **Ex. A** at ¶¶ 2(a)-(b).

Had Plaintiff not sought counsel, he may not have obtained any such recovery. This fact further supports approval of the Settlement. *See*, *Graybill*, 2018 WL 4573289, at *6 ("The Court gives deference to [counsel's] experienced opinion that the Settlement Agreement should be approved.") (*citing Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983)); *Isby v. Bayh,* 75 F. 3d 1191, 1200 (7th Cir. 1996) ("[T]he district court was entitled to give consideration to the opinion of competent counsel that the settlement was fair, reasonable and adequate."). Additionally, the Plaintiff approved the terms of the

12

Settlement as evidenced by his signature on the Agreement. Considering the foregoing, the Court should approve the Parties' proposed Settlement of this Action.

### 6. The Reaction of Absent Class Members.

The Parties have reached a proposed settlement of Plaintiff's alleged FLSA and Ohio Acts claims (as well as his other derivative claims) to resolve this action. This factor is not relevant as this is not a collective nor a class action and is, therefore, neutral. *Murton v. Measurecomp., LLC,* No. 1:07CV3127, 2009 WL 10715595, at *7 (N.D. Ohio Aug. 10, 2009); *Combs*, 2010 WL 11636094, at *5 (noting that the court may consider only those of the seven factors that are relevant to the case).

### 7. Public Interest in the Settlement.

Because this Settlement (1) resolves what would be further protracted litigation, (2) provides finality (and certainty) to the Parties; and (3) preserves judicial resources, it promotes the public interest. *See Gentrup v. Renovo Servs.*, LLC, No. 1:07CV430, 2011 WL 2532922, at *3 (S.D. Ohio June 24, 2011)("Given the uncertainties surrounding the possible trial in this matter, the certainty and finality that come with settlement also weigh in favor of a ruling approving the settlement. Such a ruling promotes the public interest in encouraging the settlement of litigation.").

## V. PLAINTIFF'S COUNSEL'S ATTORNEYS' FEES AND LITIGATION EXPENSES SHOULD BE APPROVED

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). *Cf.* O.R.C. § 4111.10(A) (potential liability includes "costs and reasonable attorney's fees as may be allowed by the court"). "A reasonable fee is 'adequately compensatory to attract competent counsel' but "avoids producing a windfall for lawyers.'" *Rembert v. A Plus Home Health Care Agency, et al.*, Case No. 20-3454 ECF 39-2 at *3-4 (6th Cir. Jan. 25, 2021), quoting, *Geier v. Sundquist*, 372 F.3d. 784, 791 (6th Cir. 2004). There are two basic measures for evaluating the fairness of an attorney's award under the FLSA—"work done and results achieved." *Rui He v. Rom*, 751 Fed. App'x. 664, 673 (6th Cir.

13

2018) (quoting *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016)). The "work done" measure is the "lodestar" method of attorney fee calculation and the "results achieved" measure is the "percentage of the fund" method of attorney fee calculation. *Gascho v. Global Fitness Holdings*, LLC, 822 F.3d at 279. The Sixth Circuit permits a court to choose either method as the court, in its discretion, deems appropriate for the circumstances of a particular case so long as the court articulates its reasons. *See, Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009). The lodestar method yields a fee that is presumptively sufficient to achieve the objective of attracting competent counsel while avoiding a windfall for the attorneys. *See, Rembert* at *4, quoting, *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010).

After the Court has confirmed that the terms of settlement are fair to Plaintiff, it may review the Parties' Agreement as to the provision of fees and costs to Plaintiff's Counsel.

As a result of extensive litigation, Plaintiff's Counsel has incurred significant attorneys' fees and costs. At the time of this Motion, Plaintiff's Counsel's attorneys' fees and costs amounted to approximately $8,344.08; however, Plaintiff's Counsel agreed to reduce their attorneys' fee to achieve settlement.

The Settlement Agreement reflects Defendants' agreement to pay Plaintiff's Counsel $6,875.00 in attorneys' fees and costs. This amount represents the payment pursuant to 29 U.S.C. § 216(b) for the amount of time and expense that Plaintiff's Counsel has dedicated to this case and the experience Plaintiff's Counsel has in FLSA actions. Defendants have agreed to pay these fees and costs as part of the negotiated Agreement. All claimed fees and costs were incurred during the course of the litigation of this Action or will be incurred during the administration of the Settlement. *See* **Ex. A**, at ¶ 2. As of this Motion, the amount of attorney fees is $7,925.00. Additionally, as of this Motion, Plaintiffs' Counsel has incurred $419.08 in costs.

Another important factor for the Court to consider is that Plaintiff's Counsel took this case on a contingency basis, meaning that if there was no recovery, the Plaintiff did not owe counsel any fee for the

14

services provided. **Ex. C** at ¶ 7. Further, Plaintiff's Counsel stated in its contract for services that it would seek to recover its attorneys' fees and costs from the employer pursuant to 29 U.S.C. § 216 (b) instead of taking any portion of the client's awards. *Id.* at ¶ 11. Courts generally look with favor upon Plaintiff's Counsels' request for an attorney fee award when they undertake the case on a contingency basis and "absorb[] the risk of an unsuccessful outcome and no fee of any kind." *Herbert et al.,* at *9, *citing Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *30. Plaintiff's Counsel seeks to have its payment of attorney's fees by Defendants, as set forth in the Settlement Agreement, granted to cover the work performed to achieve the result for the Plaintiff and for litigation expenses, and these facts warrant approval of the requested fee amount of $6,875.00 for fees and expenses.

## VI. CONCLUSION

The Parties reached this Settlement as the result of contested litigation, and it resolves a *bona fide* dispute. The Parties engaged in lengthy negotiations, analyzed all pertinent information, and resolved the issues between them. The Settlement is eminently fair, reasonable, and adequate, and provides Plaintiff with meaningful relief in a contested matter. Finally, the Settlement fulfills the relevant criteria within this Circuit's seven-factor test. For these reasons, the Court should approve the Parties' Agreement.

Date: May 11, 2023                                    Respectfully submitted,

| /s/ Jacob A. Mikalov | /s/ Robert M. Robenalt by /s/ Jacob A. Mikalov per email authorization |
|---|---|
| Jacob A. Mikalov (OH Bar No. 0102121) | Robert M. Robenalt (OH Bar No. 0042251) |
| Robert E. DeRose (OH Bar No. 0055214) | Meghan M. Delaney (OH Bar No. 0075015) |
| **BARKAN MEIZLISH DEROSE COX, LLP** | **FISHER & PHILLIPS LLP** |
| 4200 Regent Street, Suite 210 | 250 West Street, Suite 400 |
| Columbus, OH 43219 | Columbus, OH 43215 |
| Phone: (614) 221-4221 | Phone: (614) 221-1425 |
| Facsimile: (614) 744-2300 | Facsimile: (614) 221-1409 |
| jmikalov@barkanmeizlish.com | rrobenalt@fisherphillips.com |
| bderose@barkanmeizlish.com | mdelaney@fisherphillips.com |
| *Counsel for Plaintiff* | *Counsel for Defendants* |